IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DELIA J. MITCHELL                                                                                    PLAINTIFF

V.                                                                        CIVIL ACTION NO. 1:18-CV-82-SA-DAS

THE TJX COMPANIES, INC.
*doing business as* HOMEGOODS                                                              DEFENDANT

ORDER AND MEMORANDUM OPINION

Delia Mitchell filed suit in this Court on May 9, 2018 against The TJX Companies, Inc., doing business as HomeGoods, asserting race discrimination claims under Title VII and Section 1981 and age discrimination claims under the Age Discrimination in Employment Act in connection with her termination from HomeGoods on January 18, 2018. Now before the Court is the Defendant's Motion for Summary Judgment [44]. The issues are fully briefed and ripe for review.

*Background*

The Plaintiff, a 61-year-old Caucasian female, applied for a seasonal help position at HomeGoods in Tupelo, Mississippi in October 2017. HomeGoods hired the Plaintiff effective November 30, 2017, as a seasonal employee. On January 4, 2018 the Plaintiff had a verbal dispute regarding a work task with a younger African American co-worker, Aleigha Dominguez. After the incident, Dominguez reported the verbal dispute to her manager and informed her manager that she was going home for the rest of the day because she was so upset.

On January 12, 2018, the Plaintiff had a physical altercation with the same co-worker, Dominguez. The Plaintiff and Dominguez each provided written statements describing the incident. According to the Plaintiff, she walked into the room to retrieve her radio and told Dominguez that she thought "the Lord brought us together today." *Id*. at 48:23-49:13. In response,

Dominguez told the Plaintiff to "never talk to [her] that way again . . .," referring to the January 4 incident. *Id*. The Plaintiff maintains that she tried to reason with Dominguez, but that Dominguez threatened to slap her in the face. The Plaintiff told Dominguez that she was not afraid of her and told Dominguez to stop pointing her finger in her face. Since Dominguez would not stop pointing, the Plaintiff put her finger in Dominguez's face to show her "how it felt." *See* Plaintiff's statement [44-8]. The Plaintiff states that Dominguez then pushed her "really hard" and she tried to exit the room, but Dominguez pushed her against the door. The Plaintiff then exited the room.

According to Dominguez, she was putting away her equipment when the Plaintiff walked in. *See* Dominguez statement [44-4]. She planned to ignore the Plaintiff, but the Plaintiff started talking and did not apologize for the January 4 incident. Dominguez indicates that the Plaintiff knew she was mad by the look on her face and that she told the Plaintiff not to disrespected her like she did on January 4. In response, the Plaintiff told her that she was not scared of her. Dominguez then put her finger up and the Plaintiff told her not to put her finger in her face. Dominguez states that the Plaintiff then pushed her arm down and put her finger in Dominguez's face. Dominguez maintains that she then pushed the Plaintiff away from her because she was backed up against the wall. After that, Dominguez says that the Plaintiff gave her an ugly look and walked out of the room.

Shortly after the physical altercation occurred, Helene Taylor, one of the assistant managers at the Tupelo HomeGoods store, contacted Michael Florek, the District Loss Prevention Manager for the Tupelo store. Florek, who is Caucasian, reviewed the recording of the January 12 physical altercation and the written statements taken from the two employees. After this review, Florek determined that the Plaintiff was the aggressor in the altercation and that Dominguez had acted in self-defense. Florek made a recommendation to Kelsey Lott, the Regional Human Resources Generalist for the Tupelo store, that HomeGoods terminate the Plaintiff's employment

because she was the aggressor and discipline Dominguez with a final written warning for her part in the altercation. Lott, who is Caucasian, did not review the recording but instead relied upon Florek's written summary and recommendation. After reviewing Florek's written summary and the statements collected from the Plaintiff and Dominguez, Lott agreed with both of Florek's recommendations. HomeGoods terminated the Plaintiff on January 18, 2018 and issued a final written warning to Dominguez, both of which were consistent with HomeGoods policies.

In the Plaintiff's termination letter, HomeGoods cited "Improper Behavior" as the reason for her termination and explained that "Associates are expected to follow company rules and regulations and act in accordance with our code of conduct." *See* Termination Document [49-16]. The letter concluded that "[f]ollowing an investigation into the incident, your personal actions and conduct were a failure to follow rules and regulations and therefore result in termination of your employment." *Id*. In Dominguez's written warning, HomeGoods also identified "Improper Behavior" as the reason for the warning. The letter stated that "[f]ollowing an investigation into the incident, your personal actions and conduct were a failure to follow rules and regulations. Moving forwards, you will follow all company rules and regulations. Failure to comply will result in further disciplinary action, up to and including dismissal." *See* Dominguez Disciplinary Action [44-12].

After submitting a charge of employment discrimination with the Equal Employment Opportunity Commission, the Plaintiff filed the instant suit, alleging that HomeGoods terminated her because of her race and because of her age. In addition to actual, punitive, and liquidated damages, the Plaintiff also requests reinstatement.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter

of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Id*.

*Race Discrimination Claims*

The Plaintiff alleges that her termination was improperly based on race in violation of Title VII of the Civil Rights Act of 1964 and Title 42 of the United States Code Section 1981. Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Race discrimination claims brought under Title VII and Section 1981 require the same proof to establish liability and the Plaintiff's race discrimination claims will be analyzed together under Title VII's framework. *See Criner v. Tex. N.M. Power Co.*, 470 Fed. Appx. 364, 370 n. 3 (5th Cir. 2012) (per curiam) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 422 n. 1 (5th Cir. 2000)).

4

Claims of discrimination based on circumstantial evidence, such as the ones here, are subject to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The first step of the *McDonnell Douglas* analysis requires "[t]he plaintiff [to] establish a *prima facie* case that the defendant made an employment decision that was motivated by a protected factor." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995); s*ee also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (noting that "the precise requirements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'") (citation omitted). If the plaintiff establishes a *prima facie* case, the defendant must then bear "the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Mayberry*, 55 F.3d at 1089. If the defendant carries its burden, the third and final step of the analysis requires "the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination." *Id*.

Given that the Plaintiff attempts to establish a *prima facie* case by asserting that 1) she did not violate HomeGood's "improper behavior" policy because she was not the aggressor, and 2) that a similarly situated African American employee was not also terminated, the analysis falls more squarely under the work-rule violation framework instead of the traditional four factors outlined by the Parties. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (noting that "the precise requirements of a *prima facie* case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'") (citation omitted); see also *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 927 (8th Cir. 1993)

(finding "to measure a plaintiff's complaint against a particular formulation of the *prima facie* case at the pleading stage is inappropriate.").[1]

In a work-rule violation case such as this, the Fifth Circuit has determined that a plaintiff may establish a *prima facie* case of discrimination in two distinct ways. First, a plaintiff may show that she did not violate the rule for which she was disciplined. Second, even if she did violate the rule, a plaintiff may still establish a *prima facie* case by offering evidence of disparate treatment, specifically showing that "employees who were not members of the plaintiff's protected class were treated differently under circumstances nearly identical to [hers]." *Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (internal quotations omitted); *See also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citing *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980).

   I. Work-rule violation *prima facie* case: no violation of work-rule for which she was disciplined

Under the work-rule violation framework, the first way a plaintiff may establish *prima facie* case is by showing that the Plaintiff did not violate the work-rule for which she was disciplined. *Mayberry*, 55 F.3d at 1090. HomeGoods terminated the Plaintiff on January 18, 2018 after determining that the Plaintiff was the aggressor in the January 12 altercation. Since HomeGoods found the Plaintiff to be the aggressor in the situation, and not just involved in the altercation, the Plaintiff was terminated in accordance with company policy. *See* Lott Deposition [44-10] at 7:11-16; *see also* Florek Deposition [44-7] at 20:12-18. The Plaintiff argues that she was not the aggressor in the January 12 altercation and that her termination as the aggressor was therefore inappropriate under company policy. *See* Termination Document [49-16]. Indeed, the

---

[1] At the outset, the Court notes that neither party's briefing provides the Court with a coherent overview of the law relevant to the Motion. Instead, both parties' briefing is cluttered with redundant, and at times irrelevant, arguments. Here, the Court has attempted to analyze the relevant facts and law within the appropriate legal framework.

Plaintiff argues that Dominguez was the aggressor in the January 12 altercation and that the Plaintiff merely attempted to reconcile with Dominguez that day. In support, the Plaintiff cites to her written statement, Dominguez's written statement, and the recording of the January 12 altercation.

Courts in this Circuit are split on whether a plaintiff may state a *prima facie* case merely by denying that she violated a relevant work rule. *See Harkness v. Bauhaus U.S.A., Inc.*, 86 F. Supp. 3d 544, 556 (N.D. Miss. Feb. 6, 2015) (collecting cases). "In recognition of this split, recent decisions have assumed without deciding that mere denials satisfy a plaintiff's *prima facie* burden." *Vess v. MTD Consumer Group, Inc.*, No. 1:16-CV-80-DMB, 2018 WL 934935, *7 (N.D. Miss. Feb. 16, 2018) (citing *Harkness*, 86 F. Supp. 3d at 556). Accordingly, the Court assumes that the Plaintiff's denial is sufficient to establish a *prima facie* case under the work-rule violation doctrine.

    a. Legitimate Non-Discriminatory Reason

Assuming the Plaintiff established a *prima facie* case, the second step in the *McDonnell Douglas* framework requires HomeGoods to put forth a legitimate, non-discriminatory reason for terminating the Plaintiff. "For a reason to be legitimate and non-discriminatory, the defendant is not required to 'persuade the court that it was actually motivated by the proffered reasons' but must 'clearly set forth, through the introduction of admissible evidence, the reasons for [its decision].'" *Vess*, 2018 WL 934935 at *8 (quoting *Turner*, 675 F.3d at 900).

In support of its decision to terminate the Plaintiff due to her role as the aggressor in the January 12 altercation, HomeGoods offers the deposition testimony of Maxine Riley [44-3], the store manager, Michael Florek [44-6], Tupelo's District Loss Prevention Manager, and Kelsey Lott [44-10], the Regional Human Resources Generalist. All three depositions describe that the

decision to terminate the Plaintiff was based solely on the investigation revealing her role as the aggressor, or instigator, in the January 12 altercation. In addition to deposition testimony, HomeGoods also offers the evidence collected from the investigation including written statements, video recording, and disciplinary documents indicating that HomeGoods terminated the Plaintiff because she was the aggressor in the January 12 altercation.

The Court finds that HomeGoods satisfied its burden of production under *McDonnell Douglas* by offering a legitimate non-discriminatory reason for terminating the Plaintiff. *See Morgan v. Massachusetts General Hosp.*, 712 F. Supp. 242 (D. Mass. 1989) (affirmed in part, vacated in part on other grounds); *see also* Work Rules Violations, 2 Employment Discrimination Coordinator, Analysis of Federal Law § 50:37 (noting physical altercation with coworker has been found to be a legitimate reason for termination).

b. Pretext

The final step in the *McDonnell Douglas* framework requires the Plaintiff to demonstrate that HomeGoods' proffered reason for her termination is not true, but instead is a pretext for discrimination. *Mayberry*, 55 F.3d at 1089. Taking the Plaintiff's version of the facts as true, she fails to establish that HomeGoods' reason for terminating her employment was a pretext for discrimination. The undisputed evidence is that HomeGoods decided to terminate the Plaintiff's employment based on the facts revealed by the investigated it conducted into the January 12 altercation. Indeed, "the issue is not whether [HomeGoods] made an unfair or erroneous decision, but whether [HomeGoods'] decision was made with discriminatory animus. *Johnson v. Potter*, No. H-07-1732, 2009 WL 10700059, *5 (S.D. Tex. Jul. 1, 2009) (citing *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997). The Plaintiff has not "presented any evidence from which a reasonable fact-finder could conclude that [HomeGoods] did not in good faith believe that she was

the aggressor or that the decision to discharge her was not based on the evidence of her aggression as revealed by the investigation but, instead, on discriminatory animus." *Id*. Therefore, the Plaintiff fails to demonstrate that HomeGoods' reason for her termination was a pretext for discrimination and fails to carry her burden under *McDonnell Douglas*.

II. Work-rule violation *prima facie* case: disparate treatment

Even though the Plaintiff failed to establish a claim of discrimination by proving that she did not violate the work-rule for which she was terminated, the Plaintiff may still establish a *prima facie* case of discrimination under the work-rule framework by offering evidence of disparate treatment. To establish a *prima facie* case through disparate treatment, the Plaintiff must show that employees outside of her protected class "were treated differently under circumstances nearly identical to [hers]." *Mayberry*, 55 F.3d at 1090 (citations omitted). Specifically, the Plaintiff must prove that HomeGoods treated an African American employee found to be the aggressor in a physical altercation more favorably than her.[2] In this regard, the Plaintiff argues that she was treated less favorably than Dominguez, an African American employee, even though both the Plaintiff and Dominguez violated HomeGoods' "Improper Behavior" policy by engaging in the physical altercation on January 12.

The Fifth Circuit has held that an employee cannot state a *prima facie* case by merely showing that other employees were not treated the same. *See Martin v. J.A.M. Distributing Co.*, 674 F. Supp. 2d 822, 836 (E.D. Tex. Jul. 13, 2009). Rather, the employee must show that

---

[2] The Plaintiff briefly mentions that African American employees frequently violated the attendance policy but received no disciplinary action. The Plaintiff, however, makes no effort to identify these employees nor does she attempt to compare the attendance misconduct to that of her own misconduct. *See Martin v. J.A.M. Distributing Co.*, 674 F. Supp. 2d 822, 836 (E.D. Tex. Jul. 13, 2009) (finding that "employees who engage in different violations of company policy are not similarly situated."). Therefore, to the extent such an argument is relevant, the Plaintiff fails to provide more than conclusory statements, which are insufficient to survive summary judgment.

employees who were not within the plaintiff's class were not treated the same for nearly identical conduct. *Mayberry*, 55 F.3d at 1090. The Fifth Circuit has clarified that:

> [T]he plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions because if the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for the purpose of an employment discrimination analysis.

*Turner*, 675 F.3d at 893 (citing *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (emphasis in original). Under these precedents, the Plaintiff and Dominguez are not similarly situated for purposes of an employment discrimination analysis.

The Plaintiff offers no other evidence of disparate treatment and therefore fails to meet her burden, as she cannot show that African American employees were treated differently under circumstances nearly identical to hers. The Court need not continue the *McDonnell Douglas* analysis given that the Plaintiff fails to establish her *prima facie* case and summary judgment is proper as to the Plaintiff's race discrimination claims.

*Age Discrimination Claim*

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A "plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse action." *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). When, as here, a plaintiff seeks to establish her claim with circumstantial evidence only, the Court assesses the sufficiency of the evidence using the *McDonnell Douglas* burden-shifting framework. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (citations omitted). To survive summary

judgment, the Plaintiff must present sufficient evidence to create a genuine issue of fact that she was discriminated against by her employer because of her age. *See Gross*, 557 U.S. at 177-78, 129 S. Ct. 2342.

If the Plaintiff makes a *prima facie* case, the burden shifts to the employer to "produce a legitimate, nondiscriminatory reason for her termination." *Bissett v. Beau Rivage Resorts Inc.*, 442 Fed. Appx. 148, 151 (5th Cir. 2011). If the defendant offers such a reason, the burden shifts back to the plaintiff to show that the reason offered by the defendant is pretext for discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

To establish a *prima facie* case of discriminatory termination under the ADEA, the Plaintiff must demonstrate that she was 1) discharged, 2) qualified for the position held, 3) a member of the protected class, and 4) was either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of her age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (holding that the *McDonnell Douglas* approach is applicable in ADEA cases). The Defendant contests only the second and fourth elements under this framework. It is undisputed that the Plaintiff has met the first and third prongs: she is a member of a protected class, and she was terminated.

I. Qualification

The Defendant presents only one argument that the Plaintiff was not qualified for her position: that once HomeGoods determined the Plaintiff was the aggressor in the January 12 altercation, the Plaintiff was in violation of company policy and therefore disqualified her from her position. In response, the Plaintiff argues that at the time of her termination, she possessed the necessary qualifications as she met the minimum objective standards of a merchandise associate.

11

The Fifth Circuit has held that,

> A plaintiff challenging his termination or demotion can ordinarily establish a *prima facie* case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. By this we mean that plaintiff has not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired.

*Berquist v. Washington Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007). Here, there is no argument or dispute that the Plaintiff did not suffer any physical disability or occurrence that rendered her unfit for her position. Accordingly, the Court finds that for *prima facie* purposes, the Plaintiff was qualified.

II. Disparate Treatment

To establish a *prima facie* case, the Plaintiff must prove that she was either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of her age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). The Plaintiff makes no argument that she was replaced by someone younger, or outside her protected class, and instead offers conclusory evidence that she was otherwise discharged because of her age.

The Plaintiff maintains that she can imagine no reason for her discharge other than her age since a younger employee was treated more favorably than her. In support, the Plaintiff argues only that Dominguez was treated more favorably than her since Dominguez received only a warning for her involvement in the January 12 altercation. Without more, the Plaintiff fails to establish a *prima facie* case. Even if she could, however, HomeGoods has offered a legitimate non-discriminatory reason for her termination.

The Defendant's burden at this stage is to produce "evidence, which *taken* as *true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *See Price*

12

*v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citation omitted). HomeGoods asserts that it had a legitimate non-discriminatory reason for terminating the Plaintiff's employment, i.e., that the Plaintiff was found to be the aggressor in the January 12 altercation. Taking HomeGoods' reasoning as true, HomeGoods has produced evidence that, at the very least, permits the conclusion that there was a non-discriminatory reason for the Plaintiff's termination.

It is well established in the Fifth Circuit that "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988) (citations omitted). Indeed, "[t]he ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1508 (5th Cir. 1988) (citing *Bishop v. Wood*, 426 U.S. 341, 350, 96 S. Ct. 2074, 2080, 48 L. Ed. 2d 684 (1976)). Based on the facts and evidence presented, the Court finds no evidence of unlawful motivation for the Plaintiff's discharge.

Taking the Plaintiff's version of the facts as true, she fails to establish that HomeGoods' reason for terminating her employment was a pretext for discrimination. Without more, the Plaintiff fails to meet her burden under *McDonnell Douglas* and summary judgment as to her age discrimination claim is warranted.

*Conclusion*

For the reasons discussed above, the Defendant's Motion [44] for Summary Judgment is GRANTED. With no claims remaining, this case is DISMISSED with prejudice.

So ORDERED on this the 13th day of August, 2019.

/s/ Sharion Aycock  
UNITED STATES DISTRICT COURT JUDGE